UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DURAG Inc., a Minnesota corporation, | Case No. 17-cv-5325 (ECT/HB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Thomas Kurzawski, a Minnesota resident, and Lamtec America Inc., a Minnesota Corporation, LAMTEC Meß-und Regeltechnik für Feuerungen GmbH & Co. KG, a foreign corporation, and Ulrich Greul, a foreign citizen, | |
| Defendants. | |

---

Christopher P. Renz, Francis J. Rondoni, and Jennifer J. Crancer, Chestnut Cambronne PA, Minneapolis, MN, for Plaintiff DURAG Inc.

Christopher J. Haugen and Joshua A. Hasko, Messerli & Kramer PA, Minneapolis, MN, for Defendants Thomas Kurzawski, Lamtec America Inc., and LAMTEC Meß-und Regeltechnik für Feuerungen GmbH & Co. KG.

Aram V. Desteian and Daniel R. Olson, Bassford Remele, Minneapolis, MN, for Defendant Ulrich Greul.

---

In this business-tort case, Plaintiff DURAG alleges that Defendants violated federal and Minnesota law when they appropriated and used DURAG's proprietary information and intellectual property. Two Defendants—a German company we'll call "Lamtec Germany"[1] and a German citizen named Ulrich Greul—each have moved to dismiss the

---

[1] The actual name of this organization is LAMTEC Meß-und Regeltechnik für Feuerungen GmbH & Co. KG.

case against them for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  In support of their motions, Lamtec Germany and Greul say their contacts with Minnesota are negligible and that the exercise of personal jurisdiction over them here would violate due process.  DURAG does not dispute that Lamtec Germany and Greul's *own* contacts with Minnesota are insufficient.  DURAG argues instead that the Minnesota contacts of another Defendant, Thomas Kurzawski, should be attributed to Lamtec Germany and Greul under a conspiracy theory of personal jurisdiction.  Because a reasonable fact-finder could conclude that the exercise of conspiracy-based personal jurisdiction over Lamtec Germany and Greul is appropriate, the motions will be denied.

I

The amended complaint's principal factual allegations are straightforward. DURAG is a Minnesota corporation, and its business "consists of combustion technology, environmental monitoring, data management, and tunnel sensors."  Am. Compl. ¶¶ 1, 8 [ECF No. 62].  Kurzawski was DURAG's president and one of its officers from June 1995 "until February 10, 2016."  *Id.* ¶ 9.  After resigning these positions, Kurzawski remained a DURAG employee "through June 30, 2016," and during this post-resignation period he "was tasked with assisting and training and/or transitioning his colleagues and successors to ensure a seamless transition and protect the company's endeavors."  *Id.* ¶ 11.  Central to its claims, DURAG alleges that Kurzawski—while he remained one of its officers and employees—"actively promot[ed] the interests of competitors to the damage and detriment of DURAG."  *Id.* ¶ 14.  DURAG says that these activities included "conspiring" with Lamtec Germany and Greul to "unlawfully use DURAG's proprietary information and

product designs" and to establish an American subsidiary of Lamtec Germany—Defendant Lamtec America—to compete with DURAG. *Id.*; *see also id.* ¶¶ 34(a)–(l) (identifying activities). DURAG asserts eight federal and state-law claims against Kurzawski and Lamtec America. *Id.* ¶¶ 44–52 (Count I—breach of duty of loyalty); ¶¶ 53–59 (Count II—Minnesota Deceptive Trade Practices Act); ¶¶ 60–69 (Count III—federal Defend Trade Secrets Act); ¶¶ 70–80 (Count IV—federal Lanham Act); ¶¶ 81–85 (Count V—false advertising under Minn. Stat. § 325F.67); ¶¶ 86–97 (Count VI—misappropriation of trade secrets under Minn. Stat. § 325C.01–.08); ¶¶ 98–105 (Count VII—tortious interference with prospective economic advantage); and ¶¶ 118–123 (Count X—unjust enrichment). DURAG asserts two claims against Lamtec Germany and Greul together as co-defendants, and the claims arise only under state law. *Id.* ¶¶ 106–112 (Count VIII—tortious interference with contract); ¶¶ 113–117 (Count IX—civil conspiracy to tortiously interfere with prospective economic advantage). DURAG asserts one claim against only Lamtec Germany. *Id.* ¶¶ 124–127 (Count XI—unjust enrichment).

DURAG filed this case in December 2017 against Kurzawski and Lamtec America. *See* Compl. [ECF No. 1]. Lamtec Germany and Greul were not made parties until November 2019, *see* ECF Nos. 85, 86 (certificates of service), after Magistrate Judge Hildy Bowbeer granted DURAG's motion for leave to amend its complaint to add them, Order [ECF No. 61]. Kurzawski and Lamtec America opposed DURAG's motion to amend arguing, among other things, that amendment would be futile because there was not personal jurisdiction over Lamtec Germany and Greul. *Id.* at 11; *see also* Mem. in Opp'n to Mot. to Amend at 14–25 [ECF No. 39]. As presented to Magistrate Judge Bowbeer, the

personal jurisdiction question was narrow.  DURAG asserted two grounds for personal jurisdiction over Lamtec Germany and Greul: first, that "they had directed their tortious activities at the state of Minnesota," resulting in personal jurisdiction under *Calder v. Jones*, 465 U.S. 783 (1984); and second, that they had conspired with Kurzawski and Lamtec America, and this conspiracy provided an "independent basis" for personal jurisdiction.  Order at 10.  After noting Federal Rule of Civil Procedure 15(a)(2)'s command that leave to amend should be "freely give[n] . . . when justice so requires," *id.* at 11, Magistrate Judge Bowbeer carefully evaluated DURAG's proposed amended complaint, *id.* at 25–26, 29–32.  She concluded "that the allegations in the [proposed amended complaint were] not sufficient to establish the necessary minimum contacts to support personal jurisdiction—over either Lamtec Germany or Greul—under the *Calder* effects test."  *Id.* at 26.  However, she also concluded that "DURAG's conspiracy-based allegations [were] sufficient to confer personal jurisdiction over" Lamtec Germany and Greul.  *Id.* at 32.  Magistrate Judge Bowbeer then granted DURAG's motion for leave to amend.  *Id.* at 34.  Neither Kurzawski nor Lamtec America filed objections to Magistrate Judge Bowbeer's order.  Lamtec Germany and Greul were not able to file objections to the order because they were not parties when the order was entered and were not made parties within the period for filing objections.  D. Minn. LR 72.2(a) (permitting a "party" to file objections "within 14 days after being served with a copy" of the order); Certificate of Service [ECF No. 85] (showing Greul was served November 9, 2019); Certificate of Service [ECF No. 86] (showing Lamtec Germany was served November 8, 2019).

II

A

DURAG says that Magistrate Judge Bowbeer's order is "law of the case" and that it should prevent "a 'second bite' at the 'apple' of the jurisdictional argument." Mem. in Opp'n to Lamtec Germany's Mot. at 25 [ECF No. 81]. This is not correct. Magistrate Judge Bowbeer's order does not preclude Lamtec Germany and Greul from challenging personal jurisdiction. Lamtec Germany and Greul are not getting a do-over on the threshold question of personal jurisdiction. They were not parties to the case when DURAG sought leave to amend. No doubt Kurzawski and Lamtec America opposed DURAG's motion to amend with arguments like those Lamtec Germany and Greul advance here. But DURAG cites no authority suggesting that Kurzawski and Lamtec America's opportunity to advance these arguments in the context of a motion to amend under Rule 15 bars Lamtec Germany and Greul from exercising their rights to assert a personal jurisdiction defense under Rule 12(b)(2) following service of process on them. Regardless, if it applied here, the law-of-the-case doctrine is not so inflexible as DURAG suggests. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). But absent considerations that are not present here, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance[.]" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *see also Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) ("The doctrine of the 'law of the case' is a discretionary tool permitting a district court to effectively manage the legal issues

arising during litigation. It does not deprive the district court of the ability to reconsider earlier rulings." (internal citation omitted)).

B

"Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (second alteration in original) (citation and internal quotation marks omitted). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted). The plaintiff will not have to prove personal jurisdiction by a preponderance of the evidence "until trial or until the court holds an evidentiary hearing." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* (citations omitted). "But where, as here, the parties submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance one for summary judgment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citation omitted). In this circumstance, a case should not be dismissed for lack of personal jurisdiction "if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Id.* (citations omitted).

Here, whether there is personal jurisdiction over Lamtec Germany and Greul boils down to determining whether the exercise of personal jurisdiction over them would comport with constitutional due process. Why this is so deserves a brief explanation. This is a federal-question case; there is subject-matter jurisdiction under 28 U.S.C. § 1331. Am. Compl. ¶ 6. DURAG asserts federal claims "under 15 U.S.C. § 1125 of the Lanham Act and 18 U.S.C. § 1836(c)" of the Defend Trade Secrets Act. *Id.*; *see also id.* ¶¶ 60–69 and 70–80.[2] As the Supreme Court has explained:

> "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

*Walden v. Fiore*, 571 U.S. 277, 283 (2014). In *Walden*, a federal-question case, the Supreme Court looked to Nevada law to determine whether the federal district court (in Nevada) was authorized to exercise personal jurisdiction over a defendant sued under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Walden*, 571 U.S. at 283. The need to consult state law is absent in those situations where the federal statute at issue directs otherwise (*e.g.*, where the federal statute provides for nationwide service of process). *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016); *see*, *e.g.*,

---

[2] There is not subject-matter jurisdiction on the basis of diversity of citizenship. DURAG is a "Minnesota corporation" and maintains its principal place of business in Minnesota. Am. Compl. ¶ 1. Kurzawski and Lamtec America also are Minnesota citizens. *Id.* ¶¶ 2, 3. There is supplemental jurisdiction over DURAG's state-law claims under 28 U.S.C. § 1367(a).

*Fed. Fountain, Inc. v. KR Entm't, Inc.*, 165 F.3d 600, 601 (8th Cir. 1999) (en banc) (holding that the authorization of nationwide service of process in "Fed. R. Bank. P. 7004(d) is a constitutional exercise of congressional authority"). Here, DURAG asserts claims under federal statutes that do not direct otherwise. *Cortec Corp. v. Transilwrap Co.*, No. 14-cv-3261 (JNE/JSM), 2015 WL 164173, at *1 n.1 (D. Minn. Jan. 13, 2015) (recognizing that "[t]he Lanham Act does not contain a service of process provision"); *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 706 (N.D. Ill. 2017) ("The Defend Trade Secrets Act does not have nationwide service of process that would confer personal jurisdiction over all Defendants, therefore, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper in an Illinois court."). All of this means Minnesota law must be consulted to determine whether there is personal jurisdiction over Lamtec Germany and Greul, but Minnesota's long-arm statute extends the personal jurisdiction of its courts of general jurisdiction as far as federal constitutional due process allows. *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 327 (Minn. 2016). The question to be answered, then, is whether exercising personal jurisdiction over Lamtec Germany and Greul is consistent with federal constitutional due process.[3]

---

[3]   In *Walden*, the Supreme Court applied the Due Process Clause of the Fourteenth Amendment, 571 U.S. at 283, and that will be done here, also. If that were incorrect and the Fifth Amendment's Due Process Clause should be applied, it is true that the Supreme Court has "[left] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court[]" as the Fourteenth Amendment. *Bristol-Myers Squibb Co. v. Superior Court of Ca.*, ___ U.S. ___, ___, 137 S. Ct. 1773, 1784 (2017) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987)). However, DURAG does not argue that the Fifth Amendment imposes standards different from the Fourteenth Amendment, and authorities from our Eighth Circuit Court of Appeals and from district courts within the Eighth Circuit support this

Due process requires that each defendant has sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citations and internal quotation marks omitted). This means "actions by the defendant[s]" themselves must "create a substantial connection with the forum [s]tate" and provide "fair warning" to defendants that they may be subject to jurisdiction there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985) (citations and internal quotation marks omitted); *accord*, *e.g.*, *Creative Calling Sols.*, 799 F.3d at 980 (defendant's contacts must permit it to "reasonably anticipate being haled into court" in the foreign state (citation and internal quotation marks omitted)). The "fair warning" requirement will be met if defendants have "'purposefully directed' [their] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472–73 (citations omitted). Our Eighth Circuit has identified five factors that district courts are to consider in determining whether a defendant has sufficient minimum contacts with the forum state to justify a finding of personal jurisdiction: (1) the nature and quality of contacts with the forum state; (2) the quantity of those contacts; (3) the relationship between the cause of action and the contacts; (4) the

---

understanding or approach. *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 n.2 (8th Cir. 1991); *Clearent, LLC v. Cummings*, No. 4:18-cv-01857-SNLJ, 2019 WL 763800, at *2 (E.D. Mo. Feb. 21, 2019); *Motive Care & Supply, Inc. v. Airstream, Inc.*, No. 6:17-CV-06114, 2018 WL 4053908, at *2 (W.D. Ark. July 18, 2018); *C&A Plus, Inc. v. Pride Sols., LLC*, No. Civ. A3-02-118, 2003 WL 25278133, at *1 (D.N.D. Feb. 7, 2003); *Zumbro, Inc. v. Cal. Nat. Prods.*, 861 F. Supp. 773, 777 n.8 (D. Minn. 1994); *see also Honeywell Int'l, Inc. v. Venstar, Inc.*, 287 F.R.D. 478, 480 n.2 (D. Minn. 2012).

state's interest in providing a forum for its residents; and (5) the convenience to the parties. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The first three factors are of primary importance, whereas the remaining two are secondary. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citation omitted). A court must consider these factors in the aggregate. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995) (citation omitted).

DURAG does not attempt to meet its burden by showing that these factors weigh in its favor. It does not address these factors. DURAG's decision not to rely on these factors makes some sense. A fact-finder could not reasonably conclude that Lamtec Germany or Greul established minimum contacts with Minnesota permitting the exercise of personal jurisdiction based on these factors. Start with the third factor. Lamtec Germany and Greul are indisputably not "at home" in Minnesota, making this a question of specific personal jurisdiction. *See Quality Bicycle Prods., Inc. v. BikeBaron, LLC*, No. 12-cv-2397 (RHK/TNL), 2013 WL 3465279, at *3 (D. Minn. July 10, 2013) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As far as the record shows, the quantity of Lamtec Germany and Greul's contacts is negligible. In a declaration, Lamtec Germany's managing director and owner, Hans-Jürgen Altendorf, testifies that "Lamtec Germany representatives have never set foot in the State of Minnesota," except to attend a settlement conference in this case. Altendorf Decl. ¶ 2 [ECF No. 42]. Altendorf also testifies that Lamtec Germany's only other contacts with

Minnesota occurred through its partially-owned subsidiary, Lamtec America. *Id.*[4] Greul testifies that he has visited Minnesota "three or four times, and not since 2014." Greul Decl. ¶ 3 [ECF No. 78]. DURAG does not challenge the truth of Altendorf or Greul's factual testimony in these respects. DURAG does not argue that the nature or quality of these scant contacts is enough to trigger personal jurisdiction except in one respect. DURAG argues that Lamtec Germany's participation in a court-ordered settlement conference before Magistrate Judge Bowbeer shows "Lamtec Germany having sufficient contacts to satisfy the Court's personal jurisdiction requirements." Mem. in Opp'n to Lamtec Germany's Mot. at 40. DURAG cites no authority to support this assertion. Federal courts ordinarily do not consider "participation in litigation-related activities, such as discovery, depositions, settlement conferences, mediation, or arguing motions before a court, as contacts with [a forum] for personal jurisdiction purposes." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 275 n.22 (D.D.C. 2011); *see also Fidelity and Deposit Co. of Md. v. Slurry Sys., Inc.*, 235 F. Supp. 3d 1035, 1038–39 (N.D. Ill. 2016) (finding that attendance at a settlement conference did not "amount[] to constitutionally adequate minimum contacts with [the forum]"). No reason has been identified that might warrant a different conclusion here. It is true that Minnesota always—or at least almost always—will have an interest in providing a forum for its residents who

---

[4] It is settled that "[w]hether a subsidiary is subject to personal jurisdiction in the state has no effect on the jurisdictional inquiry regarding its parent." *Steinbach v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008). Though "several Courts of Appeals have held[] that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego," *Daimler AG*, 571 U.S. at 134–35, DURAG does not advance that argument here.

11

seek remedies in its courts, but nothing suggests that interest here is material or distinct in any relevant sense. By contrast, Lamtec Germany is a German company, Altendorf Decl. ¶ 2, and Greul is a German citizen whose English-language understanding is limited, Greul Decl. ¶ 1. For them, litigating in a federal court in Minnesota would be very inconvenient.

Because Lamtec Germany and Greul's own, direct Minnesota contacts are not enough to justify the exercise of personal jurisdiction over them, DURAG is left to argue that Kurzawski and Lamtec America's Minnesota contacts (which everyone agrees are enough to trigger personal jurisdiction over them) should be attributed to Lamtec Germany and Greul under the "conspiracy theory of personal jurisdiction."[5] The idea behind conspiracy-based jurisdiction is simple enough:

> As a matter of substantive law, a conspirator who performs an act in furtherance of the conspiracy does so as an agent for his co-conspirators. Plaintiffs have begun to argue that because co-conspirators are each other's agents for purposes of liability and the act of an agent in the forum state may establish jurisdiction, they need only allege contacts sufficient for one defendant to obtain jurisdiction over all co-conspirators.

Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis,* 52 Fordham L. Rev. 234, 235 (1983). The Minnesota Supreme Court has interpreted Minnesota's long-arm statute to authorize conspiracy-based personal jurisdiction. *Hunt v. Nevada State Bank*, 172 N.W.2d 292, 311 (Minn. 1969). There, the court explained:

> Once participation in a tortious conspiracy—the effect of which is felt in this state—is sufficiently established, actual

---

[5] DURAG no longer argues that the exercise of personal jurisdiction over Lamtec Germany or Greul is appropriate under *Calder v. Jones*, 465 U.S. 783 (1984).

> physical presence of each of the alleged conspirators is not essential to a valid assertion of jurisdiction. This construction of our [long-arm] statute follows from the premise that the legislature intended the statute to reach as far as constitutional limitations would permit.

*Id.* The Minnesota Supreme Court has emphasized the limits of conspiracy-based jurisdiction, noting that Minnesota's "long-arm statute . . . does not confer jurisdiction whenever a tort is committed by a nonresident[]" with consequences in Minnesota and that "due process . . . requires that 'minimum contacts' exist between the defendant and the forum state." *Kopperud v. Agers*, 312 N.W.2d 443, 445 (Minn. 1981); *see also Stangel v. Rucker*, 398 N.W.2d 602, 606 (Minn. Ct. App. 1986) ("*Hunt* does not stand for the proposition that minimum contacts are unnecessary whenever a conspiracy with in-state effects are alleged, or that such an allegation is itself a sufficient showing of minimum contacts."). Federal courts in this district and elsewhere seem to apply consistent rules to determine whether a plaintiff has shown that exercising conspiracy-based personal jurisdiction comports with due process. Conspiracy-based personal jurisdiction "requires (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Eagle Creek Software Servs., Inc. v. Jones*, No. 14-cv-4925 (ADM/FLN), 2015 WL 1038534, at *4 (D. Minn. Mar. 10, 2015); *see also Yellow Brick Rd., LLC v. Childs*, 36 F. Supp. 3d 855, 864 (D. Minn. 2014); *Peterson v. Wallace,* 622 F.Supp.2d 791, 800–01 (D. Minn. 2008); *Personalized Brokerage Servs., LLC v. Lucius*, No. 05-cv-1663 (PAM/FLN), 2006 WL 208781, at *5 (D. Minn. Jan. 26, 2006). As with any complaint or legal argument, "bald speculation or a conclusory statement that

13

individuals are coconspirators is insufficient to establish personal jurisdiction under a conspiracy theory." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008) (quoting *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997)) (cleaned up). Conspiracy-based jurisdiction seems susceptible to abuse—perhaps more than most legal theories. After all, the United States Supreme Court has emphasized that "the defendant's suit-related conduct must create a substantial connection with the forum State[,]" and that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp*, 471 U.S. at 475). Of this concern, the Tenth Circuit has written:

> We recognize parties could potentially stretch the conspiracy cause of action to subvert the due process principles that govern personal jurisdiction. We also acknowledge that personal jurisdiction requirements must be met as to each defendant. But we cannot dismiss out of hand the [conspiracy-based] jurisdictional theory [the plaintiff] presents. If three Kansans conspired to fire a cannonball into Oklahoma, we do not believe the Constitution would foreclose Oklahoma courts from exercising jurisdiction over the conspirators simply because they confined themselves to Kansas.

*Newsome v. Gallacher*, 722 F.3d 1257, 1265–66 (10th Cir. 2013) (quotations and internal citations omitted);[6] *see also Stauffacher v. Bennett*, 969 F.2d 455, 459 (7th Cir. 1992)

---

[6] The Tenth Circuit's cannonball hypothetical isn't a perfect fit with most conspiracy-based personal jurisdiction cases. In most cases, it seems, the courts address conspiracies—like that alleged here—among out-of-state and in-state defendants, and the issue is whether due process permits attributing the in-state defendant's conduct to the out-of-state defendants. The Tenth Circuit's cannonball hypothetical posits "three [out-of-state] Kansans" causing destruction in Oklahoma and, for this reason, would not require imputing contacts with an Oklahoman. The hypothetical probably better resembles the

(recognizing the presence of "doubts . . . that the due process clause permits a state to assert extra-territorial jurisdiction over a person who did not foresee that the conspiracy which he joined would commit acts within that state," but holding that "[i]f through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction") (superseded on other grounds by Fed. R. Civ. P. 4(k)(2), as recognized in *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000)).

Here, a reasonable fact-finder could conclude from (a) the allegations in DURAG's amended complaint, (b) the record evidence it submitted in opposition to the motion, and (c) the absence of meaningful resistance to these materials, that the exercise of conspiracy-based personal jurisdiction over Lamtec Germany and Greul is appropriate. To plead a civil conspiracy under Minnesota law, DURAG must show that Kurzawski, Lamtec Germany, and Greul agreed and "combined to accomplish either an unlawful purpose or a lawful purpose through unlawful means." *Personalized Brokerage Servs.*, 2006 WL 208781, at *5; *see also In re Mun. Stormwater Pond*, ___ F. Supp. 3d ___, No. 18-cv-3495 (JNE/KMM), 2019 WL 8014509, at *5 (D. Minn. Nov. 25, 2019). DURAG alleges that Kurzawski, Lamtec Germany, and Greul conspired to establish Lamtec America in Minnesota knowing their activities "violated [] Kurzawski's duties and contractual obligations" to DURAG. Mem. in Opp'n to Lamtec Germany's Mot. at 8; *see*, *e.g.*, Am.

---

jurisdictional theory embodied in *Calder*. Regardless, the hypothetical makes an apt point: the lack of contacts cannot per se rule out the proper exercise of personal jurisdiction.

15

Compl. ¶¶ 14–33. To support the allegations in its complaint, DURAG filed and cited to several documents it obtained through discovery from Kurzawski and Lamtec America that it says support the conspiracy allegations of its complaint. Whether these documents evidence a conspiracy that included Lamtec Germany and Greul's participation seems debatable. For example, the relevance of some documents DURAG cites is not obvious. *E.g.* Renz Decl., Ex. A at 2–3 [ECF Nos. 82, 83]. Some are German-language communications and no translation is provided. *Id.* at 3. Some are cited for inferences that are not plain. Mem. in Opp'n to Lamtec Germany's Mot. at 9 (suggesting email thread permits inference of conspiracy because Kurzawski and Greul used personal rather than company email addresses). DURAG alleges that many of Kurzawski's activities occurred in Minnesota, or at least that is a reasonable inference from DURAG's allegations. *See* Am. Compl. ¶¶ 1, 2, 3, 9, 11. In their briefing, Lamtec Germany and Greul make it clear that they disagree with DURAG's view of the evidence for purposes of their ultimate liability. And they challenge the viability of the conspiracy theory of personal jurisdiction as "constitutionally infirm." Reply Mem. of Lamtec Germany at 10 [ECF No. 88]. However, they advance no material challenge to whether DURAG's allegations and evidence reasonably may be construed to justify the exercise of conspiracy-based personal jurisdiction if that theory is accepted. Lamtec Germany does not argue that DURAG's allegations are insufficient in this regard. It notes (correctly) that the constitutional "minimum contacts" test applies regardless of a conspiracy-theory of jurisdiction, and it argues that DURAG cannot meet that showing because Lamtec Germany *itself* has had insufficient contact with Minnesota. *See id.* at 10–14. That argument does not address

16

DURAG's conspiracy allegations—*i.e.*, it does not address whether DURAG has shown a reasonable basis to attribute Kurzawski's Minnesota contacts and activities to Lamtec Germany or Greul.  Greul asserts that "[t]here is no allegation, and certainly no evidence identified by [DURAG], that shows that Greul himself took any action towards Minnesota, or even with the knowledge that either Kurzawski or Lamtec intended to take any action in Minnesota or that would have any effects in Minnesota."  Reply Mem. of Greul at 2–3 [ECF No. 96].  The assertions in this sentence do not fairly respond to the allegations in DURAG's amended complaint or the evidence DURAG submitted in opposition to these motions.  Greul does not identify which of DURAG's allegations or evidence are insufficient or explain why that is so.

*

This is not a final resolution of the personal jurisdiction question with respect to Lamtec Germany or Greul.  This motion was "in substance one for summary judgment."  *Creative Calling Sols.*, 799 F.3d at 979.  Eventually, DURAG will have to prove personal jurisdiction by a preponderance of the evidence at an evidentiary hearing or trial.  In view of the overlap between DURAG's conspiracy theory of personal jurisdiction and its conspiracy claim—*i.e.*, the overlap between the jurisdictional issue and the merits—it is suggested that the Parties consider and plan for how best to present and adjudicate the jurisdictional questions when that time comes.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant LAMTEC Meß- und Regeltechnik für Feuerungen GmbH & Co. KG's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 71] is **DENIED**; and

2. Defendant Ulrich Greul's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 75] is **DENIED**.

Dated: May 4, 2020

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court